IN THE MATTER OF: DASHAUN SHEPARD DOB: 9-19-87; SHALITA SHEPARD DOB: 2-8-89; JARICO SHEPARD DOB: 7-6-90; ASIA SHEPARD DOB: 2-7-92

No. COA03-212

(Filed 20 January 2004)

## 1. Termination of Parental Rights— neglect—children left in foster care for more than twelve months without reasonable progress

The trial court did not err in a parental rights termination proceeding by concluding there was clear, cogent, and convincing evidence supporting the termination of respondent mother's parental rights under N.C.G.S. § 7B-1111(a)(2) on the ground that respondent left her children in foster care for more than twelve months without showing reasonable progress had been made to correct those conditions which led to the removal of her children, and by concluding that termination was in the best interests of the children, because: (1) respondent willfully left her children in the custody of DSS for a time period well beyond the statutory period of twelve months; (2) respondent has refused to acknowledge and treat the very conditions that led to her loss of custody and even refused to acknowledge the medical diagnosis of her children; and (3) any attempt to set up a visitation with the children by the diligence of DSS or the children's guardian ad litem was frustrated at respondent's own behest.

## 2. Guardian Ad Litem— incapable parents—competency

A guardian ad litem (GAL) statutorily assigned to respondent mother under N.C.G.S. § 1A-1, Rule 17 in a parental rights termi-

nation proceeding concerning parental incapability under N.C.G.S. § 7B-1111(a)(6) could testify as to her ward's parental capability and ultimately against the interest of her ward.

Appeal by respondent Crystal Shepard from an order entered 25 September 2002 by Judge Laurie Hutchins in Forsyth County District Court. Heard in the Court of Appeals 12 November 2003.

*Robert W. Ewing for Crystal Shepard respondent appellant.*

*Assistant County Attorney Theresa A. Boucher, for Forsyth County Department of Social Services petitioner appellee; and Womble Carlyle Sandridge & Rice, PLLC, by Jason B. Buckland, for Guardian ad Litem petitioner appellee.*

McCULLOUGH, Judge.

On 6 May 1996, the Forsyth County Department of Social Services (DSS) filed Juvenile Petitions pursuant to N.C. Gen. Stat. § 7A-517 (now N.C. Gen. Stat. § 7B-400), alleging Dashaun Shepard, aged nine, Shalita Shepard, aged seven, Jarico Shepard, aged five, Asia Shepard, aged four, and their two older siblings to be "dependent juveniles" as defined by N.C. Gen. Stat. § 7A-517(13) (now N.C. Gen. Stat. § 7B-101(9) (2001)). Dashaun, Shalita, Jarico, and Asia (the "Shepard Children" when referred to collectively) were taken into non-secure custody by DSS, adjudicated to be dependent, and remained in the custody of DSS until termination of their parental rights. All statutes under the juvenile code were complied with during this period of custody.

On 17 August 2001, a petition to terminate parental rights was filed as to these four juveniles, and after a hearing on 18 March 2002, the parental rights of Ms. Shepard were terminated. Three statutory grounds were found as the basis of termination, N.C. Gen. Stat. § 7B-1111(a)(2), (3) and (6). The trial court then found it was in the best interest of Dashaun, Shalita, Jarico, and Asia to have the parental rights of their mother terminated.

In the first portion of this opinion, we uphold the trial court's determination that there was clear, cogent, and convincing evidence supporting the termination of the parental rights on at least one of the alleged adjudicatory grounds in the termination proceeding. For the sake of clarity, we do so using only the undisputed evidence before this Court. In the second portion of the opinion, we consider the dis-

**IN RE SHEPARD**

[162 N.C. App. 215 (2004)]

puted evidence set out in the testimony of the Guardian Ad Litem (GAL) statutorily assigned for Ms. Shepard in this case. Specifically we answer the question of whether such a GAL may testify as to their ward's parental capability, and ultimately against the interest of their ward as to the termination hearing. We conclude such a guardian may so testify.

## I. Undisputed Facts Supporting Grounds for Termination

### A. Facts and Procedure

The undisputed facts of this case are as follows: On 4 May 1996, Ms. Shepard was involuntarily committed to inpatient care at Forsyth/Stokes Mental Health Center with the preliminary diagnosis of bipolar disorder. The Shepard children came under the care of DSS as dependent juveniles. Non-secure custody was awarded to DSS on 6 May 1996, and with the exception of an unsuccessful trial placement of Dashaun and Jarico in the home of Ms. Shepard from October 1996 to March 1997, the children have lived continuously in the care provided by the DSS since that time.

In a 27 August 1996 juvenile order adjudicating the four children dependent juveniles, the court found as fact:

6. Crystal Shepard does not like her living environment at this time, and Jarico Shepard is having behavioral problems in the school setting.

7. Crystal Shepard appears to have difficulty raising six children as a single parent, compounded by her reluctance to accept assistance from community resources.

8. On May 4, 1996, Crystal Shepard was involuntarily committed for treatment and the preliminary diagnosis, upon admission was Bi-Polar disorder.

The order concluded as a matter of law that it was in the best interest of the Shepard children to remain in the custody of DSS. Pursuant to these conclusions, the court ordered:

2. All visitations shall be arranged and scheduled by the Forsyth County Department of Social Services.

3. Crystal Shepard shall seek out-patient therapy at Forsyth/ Stokes Mental Health and shall follow all recommendations.

. . . .

IN RE SHEPARD

[162 N.C. App. 215 (2004)]

5. Crystal Shepard shall cooperate with all agencies providing services to this family.

. . . .

7. The Forsyth County Department of Social Services shall make all appropriate resources available to Crystal Shepard for the possible reunification of this family.

Between the period 27 August 1996, and DSS's petition for termination of parental rights, Ms. Shepard struggled to comply with the conditions of the order. Suzette Hager, the social worker for DSS assigned to the Shepard children, was charged with overseeing the visitation and mental health aspects of the order when she took on the Shepard children case in 1998. In the termination proceedings, Ms. Hager testified that, as of October of 1999, Ms. Shepard no longer welcomed Ms. Hager in her home despite her status as the Shepard children's social worker. Ms. Hager testified that the last time Ms. Shepard visited Dashaun and Jarico was 5 September 2000, and the last time she visited Shalita and Asia was 21 December 2000. Additionally, Ms. Hager testified as to the following:

> During that period of time in October of '98 we were able to get Mrs. Shepard to initiate a psychological . . . evaluation which she didn't complete.
>
> And there was also an effort to get her to obtain a psychiatric evaluation, which she went to the appointment but didn't cooperate with the testing, so both of those tests came back inconclusive. And that was the only treatment that she had had during the period of time that I've been involved in the case, other than her going to meet with Doctor Bosworth.

As the caseworker for the Shepard children, Ms. Hager testified as to the children's conditions as well: Dashaun had been diagnosed bipolar, Attention Deficit/Hyper Disorder (ADHD), and adjustment disorder with disturbance in mood and conduct. He had not complied with taking his medications, was taught in a self-contained classroom, and since 1998 had resided in a therapeutic foster home. Jarico had also been diagnosed as ADHD. He was on medication, was taught in a self-contained classroom, and since 1998 had resided in a therapeutic foster home. These boys lived in neighboring homes. Shalita had also been diagnosed with ADHD, and at the time of the termination hearing there were concerns she initiated or communicated auditory and visual hallucinations, and was being assessed for thought

IN RE SHEPARD

[162 N.C. App. 215 (2004)]

process disorder. Asia struggles with adjustment disorder. The two girls lived in the same home.

Kim Nesbitt (GAL), for the Shepard children, testified in the termination proceeding that she began to oversee Ms. Shepard's visitations of the children in July of 2001. She did so when Ms. Shepard expressed problems with Ms. Hager's supervising. Ms. Nesbitt testified that she recommended twice a month visits with the girls, and once a month visits with the boys, but Ms. Shepard was to initiate such meetings. Ms. Shepard only made one direct phone call to Ms. Nesbitt in regard to such visits, and when Ms. Nesbitt tried to respond, her calls were not returned. Ms. Nesbitt had suggested a number of locations for the visitation to occur, her church being one, but Ms. Shepard could not agree on any of the offered locations.

The Forsyth County Juvenile Court ordered a psychological evaluation of Ms. Shepard to assess any progress since the 27 August 1996 juvenile order. The evaluation, dated 27 October 2000, conducted and written by Dr. Thomas Bosworth, was to include an assessment of her parenting and overall psychological functioning. As to both of these, his evaluation included the following:

> She admitted to not agreeing to allow one of the boys to be placed in a special class; first, because she could "sense" that it was not the right place for him, and, second, after she saw the classroom, she knew it was not the right place for him. She was also against her children being on medication, but she went along with it for fear that they would be removed if she refused to allow them to take the medication. She "knew" her sons did not need medication. Even now, she does not think her sons need medication . . . .
>
> . . . .
>
> . . . Ms. Shepard reported that her mood has not been good for several years. She gets sad and depressed, but she tries not to pay any attention to it. She reported that her mind is not like it used to be. Things just come into her mind, and she has thoughts that bother her. There are times when she is "confused," such as when it seems like the TV is talking in a totally different language. There are times when she has heard voices outside her door, and when she goes to look, no one is there. She has seen "scary" things that others do not see, such as a part of a person sticking out of the ground. "People worry [her]." She feels like

people mistreat her, and she gave several examples of when she has felt this way. She feels like she was put in jail based on a lie. When handcuffed, the policeman refuses to loosen the cuffs when she complains about them being too tight. In jail, she was put in a "foul cell."

In the summary of the evaluation he stated:

> Ms. Shepard suffers from severe psychological problems that have limited, and continue to limit, her ability to function adequately on her own, much less to function as a parent. Making matters worse is the fact that Ms. Shepard denies that she has any type of problem that would benefit from professional help. . . . It appears Ms. Shepard suffers primarily from having a paranoid personality disorder. Secondarily, she appears to have areas of distorted thinking, confusion, and even hallucinations. Ms. Shepard also appears to suffer from depression. . . .
>
> . . . .
>
> . . . With her disorder, however, she is not able to care for even one child in the most benign situation.
>
> . . . .
>
> Ms. Shepard's condition is not likely to improve. . . . One, Ms. Shepard does not see herself as having a problem that requires treatment. Two, paranoid people rarely trust anyone enough to get far enough along in treatment to see that it can be helpful. Three, there is not likely to be a medication that is effective enough in stabilizing her thinking, paranoia, and mood to make her want to continue to take it.

This report was of record for the termination proceeding. Dr. Bosworth later testified in the termination proceeding to reflect his evaluation.

Ms. Hager, Ms. Nesbitt, and Dr. Bosworth all testified that they believed it to be in the Shepard children's best interest to have Ms. Shepard's rights terminated.

### B. Grounds for Termination/Children's Best Interest

**[1]** The order finding both the grounds for termination and that it is in the best interest of the children that Ms. Shepard's right be terminated was based on the statutory grounds of N.C. Gen. Stat. § 7B-1111(a)(2), (3) and (6). We hold that the evidence set out above

in this opinion supports a finding of clear, cogent, and convincing evidence that Ms. Shepard has

> willfully left the juvenile in foster care . . . for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.

N.C. Gen. Stat. § 7B-1111(a)(2). Therefore, we uphold the trial court's conclusion of law to terminate on this ground and that to do so was in the children's best interest.

### 1. Standard of Review

A petition for termination of parental rights must be carefully considered in light of all the circumstances and with the children's best interest firmly in mind. "Although severing parental ties is a harsh judicial remedy, the best interests of the children must be considered paramount." *In re Adcock*, 69 N.C. App. 222, 227, 316 S.E.2d 347, 350 (1984). Termination of parental rights is a two-step procedure. N.C. Gen. Stat. § 7B-1109 (2001); N.C. Gen. Stat. § 7B-1110 (2001). During the initial adjudication phase of the trial, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights. *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997); N.C. Gen. Stat. § 7B-1111(b). A finding of any one of those grounds is sufficient to support termination of parental rights. *In re Williamson*, 91 N.C. App. 668, 678, 373 S.E.2d 317, 322-23 (1988). If the petitioner succeeds in establishing the existence of any one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111, the trial court moves to the second, or dispositional, stage, where it determines "whether it is in the best interests of the child to terminate the parental rights." *Young*, 346 N.C. at 247, 485 S.E.2d at 615. *See also* N.C. Gen. Stat. § 7B-1110(a); and *In re Blackburn*, 142 N.C. App. 607, 543 S.E.2d 906 (2001). However, so long as the court applies the different evidentiary standards at each of the two stages, there is no requirement that the stages be conducted at two separate hearings. *In re White*, 81 N.C. App. 82, 344 S.E.2d 36, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 470 (1986).

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754,

758 (1984). We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child. *In re Nolen,* 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995). "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered during the dispositional stage." *In re Blackburn,* 142 N.C. App. at 613, 543 S.E.2d at 910.

2. *Findings of Fact and Conclusions of Law*

In the termination order, the trial court made the following findings of fact:

11. Crystal Shepard has willfully left Dashaun Jovan Shepard, Shalita Shuandae Patrice Douthit Shepard, Jarico Durand Joseph Douthit Shepard, and Asia Alea Tabya Douthit Shepard in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to removal of the children.

. . . .

13. On August 15, 1996, Dashaun Shepard, Shalita Shepard, Jarico Shepard, and Asia Shepard were adjudicated to be Dependent juveniles. Crystal Shepard, the mother of the children was ordered to seek out patient therapy at Forsyth/Stokes Mental Health (now called Centerpoint Human Services) and cooperate with all agencies providing services to her family. She was additionally provided the opportunity to have regular supervised visitation with her children.

14. On February 13, 1997, Crystal Shepard was ordered to seek and follow through with therapy addressing her mental illness and maintain herself on medication as prescribed and all other therapeutic recommendations.

15. On May 7, 1998, the Forsyth County DSS was relieved by the Juvenile Court of its obligation to make efforts to reunify this family and instead the court adopted a plan by which Ms. Shepard could demonstrate directly to the Court that she has received a psychiatric evaluation and she is complying with all treatment recommendations including medication if pre-

IN RE SHEPARD

[162 N.C. App. 215 (2004)]

scribed; that she is gainfully employed and maintaining an appropriate residence for herself and her children; that she has completed a series of parenting classes and she has attended any special classes which are recommended by her children's therapists to assist her in learning about her children's special needs; and that she has cooperate[d] with all Agencies involved with she and her children.

16. Crystal Shepard continues to be in denial of her mental health needs. Ms. Shepard has refused additional psychiatric evaluations and all therapeutic interventions deemed appropriate for her. Ms. Shepard also refuses to believe that her children have special needs and are in need of special services. Ms. Shepard has been uncooperative with efforts to provide services to herself or her children.

17. In 2000, Dr. Thomas Bosworth conducted a child custody evaluation regarding Crystal Shepard and her children. In his report dated October 27, 2000, Dr. Bosworth concluded that Ms. Shepard suffers from a paranoid personality disorder and she appears to have areas of distorted thinking, confusion and even hallucinations. Dr. Bosworth also concluded that Crystal Shepard was in no condition to take responsibility for her children. Dr. Bosworth also concluded that her condition is not likely to improve. Dr. Bosworth determined that in order for Ms. Shepard's condition to improve she would need a combination of counseling and medication. Crystal Shepard does not believe she needs either one.

18. Dr. Bosworth evaluated Ms. Shepard to have severe psychological problems which limit her ability to function on her own or parent her children. Based upon her diagnosis, Ms. Shepard is unlikely to seek out or continue in treatment.

19. Dr. Bosworth evaluated Jarico Shepard and Dashaun to also have severe mental health issues; which he determined that Crystal Shepard is unable to meet their mental health needs.

. . . .

23. Crystal Shepard last visited with her 4 children on September 4, 2000. Her last visit with Shalita and Asia Shepard was on December 21, 2000. Ms. Shepard provided no cards, gifts or letters for her children on Christmas, their birthdays or other significant holidays.

24. Ms. Crystal Shepard was awarded supervised visitation with her children by the Juvenile Court of Forsyth County. She never called the Forsyth County DSS to request a visit with the children and she never called to inquire as to the well-being of her children.

25. Ms. Kimberly Nesbitt is the Guardian ad Litem for the Shepard children. Beginning in July 2001, Ms. Nesbitt volunteered to coordinate and supervise visits between Crystal Shepard and her children on a monthly basis. From July to November 2001, Ms. Nesbitt received no calls from Ms. Shepard requesting visitation with her children. In November 2001, Ms. Shepard, through counsel, requested a visit with her children on either Thanksgiving Day or Christmas Day at their grandmother's house. Ms. Nesbitt declined to provide visitation on the holiday however offered to supervise a visit during the week of Christmas at DSS or SCAN. Ms. Shepard refused to visit at DSS or SCAN and Ms. Nesbitt offered to conduct the visit at her church, McDonald's or at the skating rink. Ms. Shepard declined such visitation. No visitation occurred during November or December 2001. In February 2002, Ms. Nesbitt approached Ms. Shepard at a Court hearing and again offered to supervise a visit. Ms. Shepard indicated that she wanted to visit her children at their schools but arrangements were never made for such visitation.

The trial court then concluded as a matter of law:

1. Grounds exist pursuant to N.C.G.S. 7B-1111(a)(2) . . . to terminate the parental rights of Crystal Shepard to the children Dashaun Jovan Shepard, Shalita Shuandae Patrice Douthit Shepard, Jarico Durand Joseph Douthit Shepard, and Asia Alea Tabya Douthit Shepard.

These findings are support by undisputed evidence of record and the transcript, as set out above in this opinion, evidence which we hold to be clear, cogent, and convincing.

"Willfulness" when terminating parental rights on the grounds of N.C. Gen. Stat. § 7B-1111(a)(2), is something less than "willful" abandonment when terminating on the ground of N.C. Gen. Stat. § 7B-1111(a)(7). *Nolen*, 117 N.C. App. at 697, 453 S.E.2d at 223. A finding of willfulness is not precluded even if respondent has made some efforts to regain custody of the children. *In re Becker*, 111 N.C. App.

85, 95, 431 S.E.2d 820, 826-27 (1993). Willfulness may be found where the parent, recognizing her inability to care for the children, voluntarily leaves the children in foster care. *In re Bishop,* 92 N.C. App. 662, 669, 375 S.E.2d 676, 681 (1989). In addition to finding that the parent has willfully left the children in foster care for more than twelve months, under N.C. Gen. Stat. § 7B-1111(a)(2) the trial court must also find that the parent has failed (1) to make reasonable progress in correcting the conditions which led to the removal of the children; and (2) to show positive response to DSS's diligent efforts to encourage the parent to strengthen the parental relationship to the children or to make and follow through with constructive planning for the future of the children. *In re Taylor,* 97 N.C. App. 57, 63-64, 387 S.E.2d 230, 233 (1990).

In the instant case, there is adequate evidence to hold Ms. Shepard was willful in leaving her children in the custody of DSS for a time period well beyond the statutory period of 12 months. Additionally, we hold the evidence clear, cogent, and convincing that Ms. Shepard has refused to acknowledge and treat the very conditions that led to her loss of custody, and even refused to acknowledge the medical diagnosis of her children. This indicates that, if returned to her custody, she would not pursue treatment for herself or even her children. Finally, any attempt to set up a visitation with the children by the diligence of DSS or the children's GAL was frustrated at Ms. Shepard's own behest, and we find this inexcusable. These findings are set out as excerpted above.

Based on the undisputed clear, cogent, and convincing evidence supporting the trial court's findings of fact and conclusions of law, we hold Ms. Shepard's parental rights terminated on the grounds of N.C. Gen. Stat. § 7B-1111(a)(2), and we need not consider any other grounds of termination found by the trial court. Furthermore, we do not find the trial court abused its discretion when finding it was in the best interest of the Shepard children to have their mother's parental rights terminated. The DSS caseworker for the children, the children's GAL, and a psychiatrist all testified that termination was in the children's best interest.

Finally, we note that Ms. Shepard, while preserving as error specific admissions of evidence by the trial court which she alleges provided the basis for termination on the grounds of N.C. Gen. Stat. § 7A-1111(a)(2), did not properly preserve as error the actual finding itself. Additionally she did not assign as error that it was in the best interest of the children to terminate her parental rights. While we

chose not to in this instance, we could have simply held these as admitted. N.C.R. App. P. 10(a) and 28(a) (2001).

## II. Disputed Facts: Testimony by the GAL of Ms. Shepard

[2] While the analysis above is sufficient for us to affirm the termination of Ms. Shepard's parental rights, we next address the heart of her question on appeal. Ms. Shepard disputes the evidence offered in the testimony of the GAL statutorily assigned to her. She contends the GAL, Ms. Twanda Staley, should not have been permitted to testify against the interest of Ms. Shepard in the termination proceeding, and that this testimony is grounds for a new termination proceeding whether or not prejudice can be found. In this portion of the opinion we hold: Ms. Staley was free to testify as to all otherwise admissible evidence as the GAL for Ms. Shepard, including what she believes is in the best interest of Ms. Shepard; and that this testimony can be used as evidence to establish grounds for termination. We note that in the instant case the testimony was only gratuitous as there was clear, cogent, and convincing evidence to find at least one ground for termination without it.

### A. Statutorily Mandated GAL

When DSS pursues termination on the grounds of parental "incapability" under N.C. Gen. Stat. § 7B-1111(a)(6), "[t]he parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right. . . . [A] guardian ad litem *shall* be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent[.]" N.C. Gen. Stat. § 7B-1101 (2001) (emphasis added). On at least two occasions, this Court has ordered a new termination proceeding when the trial court failed to appoint a GAL for a parent whose parental rights were threatened on the ground of "incapability." *See In re Richard v. Michna,* 110 N.C. App. 817, 431 S.E.2d 485 (1993) (which held that, although there was no evidence that the respondent had been prejudiced by the failure of the trial court to appoint a guardian ad litem, the mandate of the statute must be observed, and a guardian ad litem must be appointed); *In re Estes,* 157 N.C. App. 513, 515, 579 S.E.2d 496, 499, *disc. review denied,* 357 N.C. 459, 585 S.E.2d 390 (2003) (where the allegations contained in the petition or motion to terminate parental rights tend to show that the respondent is incapable of properly caring for his or her child because of mental illness, the trial court is required to appoint a guardian ad litem to represent the respondent at the termination hearing.).

In this case, Ms. Shepard was properly assigned a GAL and an attorney, and this is undisputed.

*B. Legal Duties of the GAL*

Rule 17 of the North Carolina Rules of Civil Procedure sets out the duties of a GAL appointed under this section:

> Any guardian ad litem appointed for any party pursuant to any of the provisions of this rule shall file and serve such pleadings as may be required within the times specified by these rules . . . . After the appointment of a guardian ad litem under any provision of this rule and after the service and filing of such pleadings as may be required by such guardian ad litem, the court may proceed to final judgment, order or decree against any party so represented[.]

N.C. Gen. Stat. § 1A-1, Rule 17(e) (2001). North Carolina case law offers little guidance as to our reading of Rule 17 and any specific duties of a GAL assigned to a parent-ward in a termination proceeding.

In *In re Montgomery*, 311 N.C. 101, 115, 316 S.E.2d 246, 255 (1984), our Supreme Court held that termination on the grounds of parental incapability to some mental condition or substance abuse on the grounds of N.C. Gen. Stat. § 7A-289.32(7) (now N.C. Gen. Stat. § 7B-1111(a)(6)) was constitutional. The court stated:

> A parent has a right to counsel and to appointed counsel in case of indigency, if not waived by the parent. The Act also provides for the appointment of a guardian ad litem to represent the parent who suffers a diminished mental capacity. We believe the provisions of this statute adequately assure respondents, and those similarly situated, *of procedural due process protection.*

*Montgomery*, 311 N.C. at 115, 316 S.E.2d at 255 (citations omitted) (emphasis added). Rule 17 and the case law addressing the duties of GALs assigned to alleged "incapable" parents suggest the role of the GAL as a guardian of procedural due process for that parent, to assist in explaining and executing her rights.

Ms. Shepard contends that by testifying against Ms. Shepard's interests as a parent in the termination proceeding, Ms. Staley did not fulfill her duties as a GAL and in fact breached the duties owed to her ward. Thus, Ms. Shepard claims this was equivalent to not being assigned the statutorily required GAL, and is grounds for a

new termination proceeding under the authority of *Estes* and *Richard*. We disagree.

The transcript shows Ms. Staley was assigned as the GAL in accord with N.C. Gen. Stat. § 7B-1101 approximately two months before the termination proceeding. Before the hearing, she met with Ms. Shepard on three separate occasions, totaling approximately three hours. It is clear from these meetings that Ms. Staley sought to protect the interest of Ms. Shepard and to make her understand the gravity of the termination proceeding. On direct examination by DSS, Ms. Staley stated:

> This has been a difficult case for me. I think the main problem that we're dealing with is that Mrs. Shepard doesn't believe that she has any problems. And what I suggested to her, because I didn't think she, she understood—or I wanted to make sure that she understood, that her mental health or her mental issues were at issue in this TPR proceeding.
>
> And I wanted to make sure that she understood that and that she understood that there was a possibility that if the Judge believed that and if she wasn't getting the help that had been recommended, that she could possibly lose her children.
>
> . . . .
>
> And so I asked her if I could find a black female therapist or psychologist that did not work for CenterPoint or did not work for the State of North Carolina, if she would be willing to talk to one of them. I told her I had two in mind, and if she would be willing to submit herself to talk to either one of these ladies, black females.
>
> . . . .
>
> I tried to explain to her that now that she was within the system, whether she thought it was right or wrong, what had happened to her and what had happened to her children, if she had a specific plan for herself.

Furthermore, the transcript reveals a number of instances where Ms. Staley and Ms. Shepard's attorney were working together during the course of the proceeding to protect the interest of Ms. Shepard.

Beyond this due process protection, there are no specifics as to the proper conduct of the GAL who is acting purely as a guardian and

not an attorney (thus falling outside of the North Carolina State Bar's Revised Rules of Professional Conduct). Furthermore, North Carolina courts now recognize all testimonial privileges through statute. *See* N.C. Gen. Stat. § 8-49, *et. seq.* (2001). There is no testimonial privilege that Ms. Shepard could raise to stop Ms. Staley from testifying, and we are not inclined to now adopt one in common law.

In *In re Farmer*, 60 N.C. App. 421, 299 S.E.2d 262, *disc. review denied*, 308 N.C. 191, 302 S.E.2d 243 (1983), at a competency hearing, we determined there was no authority to bar a GAL from testifying as to the competency of their ward:

> The essence of respondent's argument seems to be that allowing the guardian to testify as to the ward's incompetency is tantamount to compelling respondent to testify against herself. Respondent cites no authority to support this argument, but contends that "sound policy" should exclude such testimony. We are not aware of any restrictions on the competency of guardians *ad litem* as witnesses in trials involving their wards. *See* G.S. 8-49; G.S. 8-50; and 1 Brandis on North Carolina Evidence, §§ 53 and 54.

*Id.* at 424, 299 S.E.2d at 264. While *Farmer* concerned a competency hearing, we hold that its authority covers the question in this case. In fact, as a matter of policy, Ms. Shepard's case is less worrisome than concerns raised in *Farmer* as she is in a better position to rebut the testimony of Ms. Staley with her own, and further was likely of more sound mind not to disclose potentially damaging information to the GAL in the first place than the party found *incompetent* in *Farmer*.

Finally it should be noted that Ms. Shepard did not testify as a witness in the proceeding, and relied on calling Ms. Staley as a witness to represent her interests after the disputed testimony:

> Q: Here in the last few minutes, you and I have had a side bar conversation with Mrs. Shepard about whether she wants to speak on her behalf, is that correct?
>
> A: That is correct.
>
> Q: Okay. And would it be correct to say that she has expressed some reservations about being able to fully and appropriately articulate her position here today?
>
> A: That's correct.

IN RE SHEPARD

[162 N.C. App. 215 (2004)]

Q: Would it be fair to say that to an extent, you know what her position is?

A: Yes.

Q: Okay. And we did agree that, more in the capacity of me calling you as her witness, you were willing to be her spokesperson, is that correct?

A: Yes, and she agreed to that. I think it was her suggestion.

From these statements it is fair to assume that, regardless of Ms. Staley's being called as a direct witness by DSS, her testimony would have been elicited for the purposes of being Ms. Shepard's "spokesperson" for the record. Ms. Staley's testimony then would have been subject to cross-examination by DSS, bringing to light the same evidence that DSS procured in their direct examination. This assumption is bolstered by the fact that other than Ms. Staley's testimony, Ms. Shepard called no witnesses.

In sum, we determined there to be clear, cogent and convincing evidence to terminate Ms. Shepard's parental rights as to these four children on the grounds of N.C. Gen. Stat. § 7B-1111(a)(2). Therefore, we need not address any other grounds found by the trial court. Additionally, we hold the evidence offered through the testimony of Ms. Shepard's GAL, Ms. Staley, is admissible and could have been used to meet the clear, cogent, and convincing standard as to any of the statutory grounds for termination.

Therefore, we affirm.

Affirmed.

Judges TYSON and BRYANT concur.