IN RE: J.W.B.G., III, & T.F.A.
No. COA09-177
Court of Appeals of North Carolina.
Filed June 2, 2009
This case not for publication
Lauren Vaughan for Iredell County Department of Social Services petitioner appellee.
Hunton & Williams, by Jason S. Thomas, for guardian ad litem.
David A. Perez for respondent-mother appellant.
ROBERT N. HUNTER, JR., Judge.
Respondent-mother appeals from orders terminating her parental rights to juveniles J.W.B.G., III, ("J.G.") and T.F.A. ("T.A."). The trial court also terminated the parental rights of the juveniles' fathers, but they are not parties to this appeal. Respondent contends that the trial court's conclusion that grounds existed to terminate her parental rights is not supported by valid findings of fact based on the evidence introduced at the termination hearing, and that the trial court abused its discretion when it concluded it was in the juveniles' best interests to terminate her parental rights. We affirm.
The Iredell County Department of Social Services ("DSS") first came into contact with respondent in 1998, after she left J.G.unattended in her car in a shopping center parking lot and was required to attend parenting classes. In 1999, respondent brought J.G. to DSS to relinquish custody of him, and DSS placed J.G. in foster care. Although respondent retained custody of J.G. at that time, by 2003 respondent had an increasingly difficult time parenting J.G. and began to allow him to live with one of his teachers.
On 28 October 2005, respondent left J.G. and T.A. home alone while she worked. Respondent refused day care and other services, and asked DSS to place the juveniles in foster care. On 31 October 2005, respondent again requested that the juveniles be placed in foster care. DSS filed petitions alleging neglect and obtained nonsecure custody of the juveniles on 1 November 2005.
Respondent continued to assert that she did not want custody of J.G. On 13 December 2005, however, respondent agreed to a home services agreement, which required her to obtain mental health treatment, obtain a psychological evaluation, complete parenting classes, maintain appropriate housing and employment, demonstrate monthly budgeting skills, and follow all recommendations.
On 31 January 2006, respondent stipulated that the juveniles were neglected, and the court ceased reunification efforts. J.G. still lived with the teacher, and respondent failed to visit the juveniles regularly and made inconsistent statements about whether she wanted to regain custody.
Thereafter, respondent sought treatment from two different therapists, and one of her therapists reported she was making progress in June of 2006. As a result, the permanent plan for the juveniles was changed to a concurrent plan of reunification with respondent and guardianship.
In September 2006, respondent began attending counseling with the juveniles. Respondent attended monthly sessions in October and November, but cancelled the December session. In March of 2007, the court permitted a trial home placement. Around that time, respondent obtained a commercial driver's license and took a long-distance trucking job that required her to be gone for one week. When respondent returned, she refused to continue counseling. The trial placement ended in May 2007, after respondent got into an argument with J.G. and told the juveniles that she hated them and wished she had not attempted to reunite with them. J.G. ran away from home, and respondent made no effort to find him until the next day. After the juveniles returned to foster care, respondent did not visit them. Respondent had no contact with the juveniles between May and July of 2007, and then again from July through December 2007.
At a hearing on 3 July 2007, the court changed the permanent plan back to guardianship for adoption for T.A. and to guardianship for J.G. Respondent resumed counseling, but did not like other people "in her business" and still "hated" everyone. Respondent acted annoyed and did not interact with the juveniles during visits. As of the time of the termination hearing, respondent had not seen the juveniles since February of 2008. While in foster care, T.A. improved her behavior and became attached to her foster family, which expressed interest in adopting her. At the same time, J.G. began to visit a foster family and requested placement in that home. J.G.'s permanent plan was changed to guardianship for adoption.
At the termination hearing, respondent testified that she attended therapy and worked part-time. A social worker testified that DSS could not monitor respondent's progress because the telephone numbers she provided were either disconnected or incorrect, and that respondent failed to contact DSS to update them on her progress. The trial court received into evidence all of the prior orders and other documents in the juveniles' files.
The trial court found that grounds existed to terminate respondent's parental rights as to each juvenile pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) (2007), because respondent had failed to make reasonable progress toward correcting the conditions that led to the removal of the juveniles from her home. The trial court also concluded that it was in the best interests of each juvenile to terminate respondent's parental rights. Respondent-mother appeals.
Respondent's first contention is that the trial court's conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate her parental rights is not supported by findings of fact that are supported by competent evidence. Respondent specifically assigns error to findings of fact 9 (e, f, h, j, k, p, r, u, x-z), 11, 12, 16, and 19 (e, f, h, j). We disagree.
In termination of parental rights cases, a trial court's findings of fact must be supported by clear, cogent, and convincing evidence. In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004). That "standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-110, 316 S.E.2d 246, 252 (1984).
In the adjudicatory stage, the burden is on the petitioner to prove that at least one ground for termination exists by clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-1109(f) (2007); In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed, disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). "'[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them.'" In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (quoting Hunt v. Hunt, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987)). Where a finding of fact is not challenged by the appellant, it is presumed to be supported by competent evidence. See In re S.D.J., ___ N.C. App. ___, ___, 665 S.E.2d 818, 824 (2008).
A court may terminate a respondent's parental rights if it finds
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. § 7B-1111(a)(2).
"Willfulness under [N.C. Gen. Stat. § 7B-1111(a)(2)] means something less than willful abandonment, and `does not require a finding of fault by the parent.'" In re S.N., ___ N.C. App. ___, ___, 669 S.E.2d 55, 59 (2008) (quoting In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996)).
In this case, even setting aside the specific findings of fact challenged by respondent, the trial court made findings sufficient to support its conclusion that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). The trial court found that the juveniles were originally removed from respondent's home on 31 October 2006, and after returning for a two-month trial period, were returned to DSS custody on 25 May 2007. Respondent failed to properly supervise the juveniles and refused to accept day care or other services for the juveniles. Although there were periods of time during which respondent's situation and attitude toward the juveniles improved, those periods were offset by periods when the situation deteriorated, ultimately leading up to the termination hearing. Over the period of DSS's involvement, respondent repeatedly expressed a desire to relinquish her parental rights, and the trial court observed that respondent's attitude toward the juveniles remained "flat" at the time of the hearing. The trial court found that at a May 2008 hearing, respondent failed to provide any verification that she was working on her case plan. All of these findings are supported by the evidence elicited at the hearing and validate the trial court's conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights. Accordingly, this argument is without merit.
Respondent also contends that the trial court abused its discretion when it concluded that it was in the juveniles' best interests to terminate respondent's parental rights. We disagree.
Once the trial court determines that a ground for termination exists, it moves on to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2007). The court's decision at this stage is reviewed for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
In determining the best interests of the child, the court must consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a)(1)-(6).
In this case, the trial court's orders demonstrate that it considered the relevant factors and made a proper determination that termination was in the juveniles' best interests. The trial court made a finding addressing each juvenile's age. The trial court found that each child was adoptable, although J.G. expressed some reluctance about adoption. Each juvenile had spent about one-third of his or her life in foster care and had a minimal bond with respondent. Under the circumstances, we find that the trial court appropriately exercised its discretion when it concluded that it was in the juveniles' best interests to terminate respondent's parental rights.
Affirmed.
Judges ERVIN and BEASLEY concur.
Reported per Rule 30(e).