IN THE MATTER OF: L.B.G.,
No. COA09-1498.
Court of Appeals of North Carolina.
Filed April 20, 2010.
Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee Yancey County Department of Social Services.
Lucas & Ellis, P.L.L.C., by Anna S. Lucas for respondent-appellant father.
Robin E. Strickland for respondent-appellant mother.
Karen A. Leahy for guardian ad litem.

UNPUBLISHED OPINION
BRYANT, Judge.
J.D.G.[1] ("respondent-father") and R.M.W. ("respondent-mother") appeal from an order terminating their parental rights to their minor child, L.B.G. ("the juvenile"). On 20 February 2008, the trial court found the juvenile neglected. After a hearing on the petition, the trial court entered an order on 2 September 2009 terminating the parental rights of respondent-parents. The court found both respondent-parents had neglected the juvenile and that respondent-father had failed to establish paternity of the juvenile or provide financial support or care to the juvenile. Respondent-father filed notice of appeal from the order on 25 September 2009, and respondent-mother filed notice of appeal on 30 September 2009. As discussed below, we affirm.

Facts
Respondent-parents are the biological mother and presumed biological father of the juvenile. Yancey County Department of Social Services ("petitioner") first became involved with the family on 29 October 2007 when it received a report alleging substance abuse, domestic violence and neglect of the juvenile. At the time of the report, respondent-mother had just given birth to the juvenile's sister, J.G. Petitioner initially provided respondent-parents with in-home services, and established a safety plan wherein respondent-parents agreed they would only be around their children with other adult supervision.
On 26 November 2007, respondent-father was arrested on drug charges. Petitioner subsequently found the juvenile in the home of the paternal grandfather who also signed a safety plan insuring the respondent-parents would not be around the children without supervision. Respondent-parents then took the juvenile to South Carolina, but returned on 29 November. On 30 November 2007, L.B.G.'s newborn sister J.G. was found dead in her crib.
On 30 November 2007, petitioner filed a petition alleging L.B.G. was neglected and obtained non-secure custody of the juvenile. After a hearing, the trial court entered an order on 20 February 2008 finding L.B.G. to be a neglected juvenile. The court continued custody of the juvenile with petitioner and ordered respondent-parents to have no unsupervised visits with the juvenile. By order dated 26 March 2008, the trial court found respondent-parents had limited opportunities to visit with the juvenile as they had both been incarcerated and faced additional criminal charges. The court then ordered respondent-parents to participate in substance abuse services, psychological evaluations, parenting classes, and an anger management/domestic violence program, and to refrain from further illegal activity, maintain safe and stable housing, obtain and maintain stable employment, and rectify all outstanding legal issues.
On 23 October 2008, the trial court entered an order ceasing efforts to reunify the juvenile with respondent-parents. The court found both respondent-parents still had pending criminal matters, and although both reported they were employed, neither had paid any support for the juvenile. The court further found respondent-father had not appeared for his psychological evaluation, attended parenting classes or anger management therapy, had a substance abuse assessment, or visited with the juvenile since 12 June 2008. The court also found respondent-mother was not visiting the juvenile and had not yet signed a case plan with petitioner. The trial court set adoption as the permanent plan for the juvenile, and petitioner immediately filed a motion to terminate the parental rights of respondent-parents to the juvenile.
Both parents argue (I) the trial court erred in concluding grounds existed to terminate their parental rights in that both respondent-parents had neglected and continued to neglect the juvenile pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). In addition, respondent-father argues (II) the trial court erred in concluding grounds existed to terminate his parental rights to the juvenile pursuant to N.C.G.S. § 7B-1111(a)(5) because he failed to establish paternity or provide substantial financial support or consistent care to the juvenile. Because we affirm the trial court's conclusion in argument I, we do not address respondent-father's argument II.

Standard of Review
"Termination of parental rights is a two-step process. In the first phase of the termination hearing, the petitioner must show by clear, cogent and convincing evidence that a statutory ground to terminate exists." In re S.N., 194 N.C. App. 142, 145-46, 669 S.E.2d 55, 58 (2008) (citations omitted), aff'd per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009).
If the petitioner succeeds in establishing the existence of any one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111, the trial court moves to the second, or dispositional, stage, where it determines whether it is in the best interests of the child to terminate the parental rights.
In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (citations and quotation marks omitted), disc. review denied, In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). "On appeal, [o]ur standard of review for the termination of parental rights is whether the [trial] court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (citations and quotation marks omitted). However, "[t]he trial court's conclusions of law are fully reviewable de novo by the appellate court." In re S.N., 194 N.C. App. at 146, 669 S.E.2d at 59 (citation and quotation marks omitted).

Analysis
Respondent-parents argue the trial court erred in concluding grounds existed to terminate their parental rights in that both respondent-parents had neglected and continued to neglect the juvenile pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). We disagree.
Grounds for termination of parental rights exist where "[t]he parent has abused or neglected the juvenile." N.C.G.S. § 7B-1111(a)(1) (2009). The North Carolina Juvenile Code defines a neglected juvenile as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2009). "[T]his Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citations and quotation marks omitted).
"In deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child `at the time of the termination proceeding.'" In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)). "[A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. at 713-14, 319 S.E.2d at 231. "Termination may not, however, be based solely on past conditions that no longer exist." In re L.O.K., 174 N.C. App. at 435, 621 S.E.2d at 242 (citation omitted). "If there is no evidence of neglect at the time of the termination proceeding, . . . parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000). The trial court should "consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." In re Ballard, 311 N.C. at 715, 319 S.E.2d at 232. In so doing, the trial court may consider whether the parent has "made any meaningful progress in eliminating the conditions that led to the removal of [the] children." In re Leftwich, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999) (affirming termination on grounds of neglect based on past adjudications of neglect in conjunction with the respondent's failure to improve her lifestyle and eliminate the problems which led to the original neglect adjudication); see also In re Montgomery, 311 N.C. 101, 316 S.E.2d 246 (1984) ("Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs . . . and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected.").
At the time of the hearing on the motion to terminate parental rights, the juvenile had not been in the custody of respondent-parents for more than twenty months. Thus, while the trial court could consider the past adjudication of neglect, it was required to find either ongoing neglect at the time of the hearing or a probability of repetition of neglect if the juvenile were returned to respondent-parents. Here, the trial court found that respondents "have neglected the juvenile and have continued to neglect the juvenile" as prescribed by N.C.G.S. § 7B-1111(a)(1) in that:
the juvenile was adjudicated a neglected juvenile at the 20 November, 2007 Juvenile Term of District Court for Yancey County, North Carolina; that the juvenile did not receive proper care, supervision or discipline from the juvenile's parents; that the respondent parents did not provide necessary medical care; that the juvenile lived in an environment injurious to the juvenile's welfare; that the respondent parents subjected the minor child to substance abuse, domestic violence and neglect; that the respondent mother advised Yancey DSS that the juvenile had been previously abused by a third party; that the respondent parents both admitted that the juvenile had not received necessary immunization shots and had not received doctor care over an extensive period of time; that DSS established a safety plan providing the parents could only be around the juvenile with other adult supervision; that this plan was broken on several occasions; that the juvenile's sibling [J.G.] died 30 November, 2007, while in the care of the respondent parents; that the respondent parents both have a long criminal history including pending criminal cases that have not been resolved; that the respondent parents have not maintained a stable and suitable home; have not provided stability for the juvenile; the respondent parents are unable at the present time to eliminate those condition[s] which supported the Court's prior adjudication of neglect; that the respondent parents have not complied with their DSS case plan; [and] that the respondent parents have not exercised visitations.

(Emphasis added). This finding specifies that respondents "have neglected the juvenile and have continued to neglect the juvenile" indicating that the trial court was focused on neglect at the time of the proceeding. As in In re Leftwich, the trial court found that "respondent parents are unable at the present time to eliminate those condition[s] which supported the Court's prior adjudication of neglect[.]"
Further, the trial court found "that the respondent parents have not complied with their DSS case plan; [and] that the respondent parents have not exercised visitations." In an unpublished opinion, this Court has held findings that a parent has failed to maintain consistent contact with and regularly visit the juvenile, delayed signing and acting on a case plan with DSS, and failed to provide verification of substance abuse assessment or treatment are sufficient to support a finding of ongoing neglect of a juvenile not in the parent's custody. See In re J.D.W., 188 N.C. App. 164, 654 S.E.2d 833 (2008) (unpublished). Failure to visit and maintain consistent contact with a juvenile is an especially important consideration. Id.; see also In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) ("on the question of neglect, the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship.").
Respondent father contends that the portion of finding 13 quoted above is not supported by clear and convincing evidence because social worker Jack Moore testified that respondent visited with the juvenile "two or three" times during the more than twenty months juvenile had been in DSS custody. In In re J.D.W., the respondent had "paid only a few visits in a sixteen-month period and had not seen the child for five months at the time of the hearing." Id. While finding 13 could have been more carefully phrased to reflect that respondent-father visited the juvenile sporadically, we conclude that the import of this finding is supported by clear and convincing evidence. As in In re J.D.W., we determine these few visits during the extended time period in question are evidence of respondent-father's ongoing neglect of the juvenile.
The portion of finding 13 quoted and emphasized above established respondents' ongoing neglect of the juvenile at the time of the termination hearing. This finding states that respondents had not 1) corrected the conditions which led to the prior adjudication of neglect, 2) complied with their DSS case plan or 3) meaningfully exercised visitation with the juvenile. Accordingly, we affirm the trial court's conclusion that grounds existed to terminate respondents' parental rights to L.B.G. pursuant to N.C.G.S. § 7B-1111(a)(1).
Having upheld the court's adjudication on the ground of ongoing neglect at the time of the hearing, we need not address respondent-father's argument II. See In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
Affirmed.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Initials have been used throughout to protect the identity of the juvenile.