DAVIS, Judge.
A.G. ("Respondent-mother") appeals from an order terminating her parental rights to her daughter "Agatha."[1] On appeal, she argues that the trial court abused its discretion in terminating her parental rights because the trial court failed to consider the availability of Agatha's maternal grandmother to serve as an alternative placement for Agatha. After careful review, we affirm.
Factual and Procedural Background
From the time of her birth in September 2008, Agatha resided primarily with her maternal grandmother ("Grandmother") until 26 September 2011 when she moved with her father and sister to Rowan County. On or about 13 November 2011, Agatha's sister, H.G., died while in the care of their father. On 25 October 2012, Agatha was adjudicated as a neglected juvenile. Custody of Agatha was awarded to the Rowan County Department of Social Services ("DSS"), and Grandmother was allowed to have visitation with her.
On 22 July 2015, DSS filed a petition to terminate parental rights. A hearing was held beginning on 17 December 2015 before the Honorable Kevin Eddinger in Rowan County District Court. On 19 July 2016, the trial court issued an order finding three grounds for termination of Respondent-mother's parental rights: (1) Respondent-mother neglected Agatha and a reasonable probability existed that the neglect would continue; (2) Respondent-mother failed to correct the conditions that led to the removal of the child; and (3) Respondent-mother failed to pay a reasonable portion of the cost of care for Agatha while she was in foster care. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2015).
The trial court also concluded that termination of parental rights would be in Agatha's best interests.[2] Respondent-mother filed a timely notice of appeal.
Analysis
A proceeding to terminate parental rights is a two-step process involving an adjudication phase and a disposition phase. In re Blackburn , 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication phase, the trial court must determine whether the petitioner has established-by clear, cogent, and convincing evidence-that at least one of the grounds for termination enumerated in N.C. Gen. Stat. § 7B-1111 exists. Id. If the court determines that the existence of a statutory ground for termination was established, it then moves to the disposition phase where it considers whether termination of parental rights is in the best interests of the juvenile. Id.
In the present case, Respondent-mother does not challenge the trial court's adjudication that grounds existed for termination. Instead, she only challenges its determination in the disposition phase that the termination of her parental rights was in Agatha's best interests given the availability of Grandmother as a possible placement option for Agatha.
This Court reviews for abuse of discretion a trial court's determination that the termination of parental rights is in the juvenile's best interests. In re Shepard , 162 N.C. App. 215, 222, 591 S.E.2d 1, 6, disc. review denied , 358 N.C. 543, 599 S.E.2d 42 (2004). "An abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." In re J.L. , 199 N.C. App. 605, 608-09, 685 S.E.2d 11, 14 (2009) (citation and quotation marks omitted).
N.C. Gen. Stat. § 7B-1110(a) provides that in determining whether the termination of parental rights is in a child's best interests,
the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2015). While the court must consider all of these factors, it is required to make written findings of fact only regarding those factors that are relevant and have an impact upon the court's decision. In re D.H. , 232 N.C. App. 217, 221-22, 753 S.E.2d 732, 735 (2014).
In In re M.M. , 200 N.C. App. 248, 684 S.E.2d 463 (2009), disc. review denied , 364 N.C. 241, 698 S.E.2d 401 (2010), the respondent-father argued that the trial court abused its discretion in terminating his parental rights to his son because the child's paternal grandmother was willing to take custody of him. We rejected this argument, holding that "[a] trial court may, but is not required to, consider the availability of a relative placement during the dispositional phase of a hearing to terminate parental rights." Id. at 258, 684 S.E.2d at 469.
In the present case, the trial court made the following pertinent findings of fact during the adjudication phase:
7. [DSS] assessed the needs and safety of [Agatha] and filed a juvenile petition and custody order on April 5, 2012. In court on October 25, 2012, [Respondent-mother], [D.M.], and [Grandmother] stipulated and consented that [Agatha] was a neglected juvenile based on the significant substance abuse issues of [Respondent-mother], [Respondent-mother]'s lack of a stable home, the concerning death of [Agatha]'s sibling [H.G.], the ongoing relationship of [Grandmother] with accused and substantiated sex offender Kenneth Watts, the concerns of [Agatha]'s contact with Mr. Watts, and the pending criminal charges and investigations against [D.M.].
8. .... The court authorized unsupervised visits for [Grandmother] with conditions, including that Kenneth Watts would have no contact of any kind with [Agatha].
....
11. .... In 2013 [Agatha] revealed to Ms. Lance [the licensed family therapist] that she saw "Nana" during a visit with her grandmother. [Agatha] stated her grandmother told "Nana" to hide in the woods so [the social worker] would not see him. "Nana" was what [Agatha] called Kenneth Watts. Ms. Lance recommended that unsupervised visits between [Agatha] and her grandmother cease. ...
....
14. .... [Respondent-mother] reported to the assessing clinician that she had been sexually molested as a child by her mother's boyfriend....
....
20. .... In October 2015 when [Respondent-mother] was released from prison she went to live with [Grandmother] and Kenneth Watts.
Additionally, the trial court made the following pertinent findings of fact during the disposition phase:
1. [Ms. B.] has been the licensed foster parent to [Agatha] since December 20, 2012. [Agatha] was four years old at the time. She is now seven and a half. [Agatha] continues to appear extremely happy, comfortable, and well-adjusted in her placement. [Agatha] is flourishing with the consistent stability and structure that has been provided to her in the ... foster home. [Ms. B.] continues to have two additional foster children in her home, and [Agatha] looks at them as her siblings. [Ms. B.] is willing to support visits with [Agatha] and her half siblings. [Agatha] has stated that she wants [Ms. B's] home to be her forever home, and she wants to be adopted by [Ms. B.]. [Ms. B.] is willing and ready to adopt [Agatha], and she describes [Agatha] as being like a daughter to her.
2. [Ms. B.] has a five bedroom home, with 2,600 square feet, built in 2007. It is located in a safe neighborhood two miles outside the city limits of Salisbury. [Agatha] has her own bedroom.
3. [Agatha] and [Ms. B.] are clearly bonded as evidenced by their physical affection. [Agatha] refers to [Ms. B.] as "Momma" or "Mom." [Ms. B.] treats [Agatha] like her own child and attempts to engage her in all the opportunities and experiences she can. [Ms. B.] has taken [Agatha] on numerous vacations, including to the Florida Keys twice, Myrtle Beach multiple times, Utah, Nevada, Disney World, and Seaworld. [Ms. B.] takes [Agatha] to the park and swimming regularly. [Agatha] is also bonded with [Ms. B.'s] immediate and extended family members, spending time with them regularly.
4. [Agatha] is a first grader ... on the A/B Honor Roll. [Ms. B.] reads with [Agatha] and helps her with homework. [Ms. B.] encourages [Agatha] to participate in sports, and [Agatha] has been involved in soccer and gymnastics. [Ms. B.] takes [Agatha] to church regularly.
5. [Ms. B.] is committed to keeping [Agatha] safe and protected. She prefers adoption over other permanency options because she does not want anyone to ever be able to take [Agatha] from her. [Ms. B.] looks forward to seeing [Agatha] grow up and eventually have her own family. [Ms. B.] plans to allow [Agatha] to continue to spend time each week with her paternal family.
6. [Agatha] has a significant bond with [Grandmother] and with her half-siblings. [Grandmother] visited with [Agatha] approximately twenty-three times during the time that Social Worker Hoffner supervised the case.... The visits between [Agatha] and [Grandmother] and between [Agatha] and her half-siblings were enjoyed by all participants and were usually very positive. [Agatha] would always hug her grandmother at visits. Placement with [Grandmother] is not appropriate, however, since [Grandmother] has demonstrated through consistent contact with Kenneth Watts that she will not keep [Agatha] safe from him.
The court also made findings of fact regarding Respondent-mother's relationship with Agatha, including a finding that "[w]hile [Agatha] is kind to her birth family and does not want to offend them, her actions are clear that there is not a strong bond with her mother."
The trial court ultimately found that termination of parental rights was necessary to accomplish the permanent plan of adoption and would enable Agatha's adoption by her foster mother as early as possible. It further determined that Agatha "is more likely to be adopted at her current age than if the process was delayed[,]" and that "[t]he likelihood of adoption ... is extremely high."
Based on its findings of fact, the court concluded that
... the age of the juvenile, the likelihood of adoption, the lack of significant bond between the juvenile and the [Respondent-mother and D.M.], the strong bond between the juvenile and the prospective adoptive parent, and the extremely positive relationship between the juvenile and the prospective adoptive parent support the termination of the parental rights of the [Respondent-mother and D.M.].
Respondent-mother contends that the trial court's ruling at the disposition phase constituted an abuse of discretion because Agatha and Grandmother had a strong bond as noted in Finding of Fact No. 6. She challenges the portion of that finding indicating that "[p]lacement with [Grandmother] is not appropriate ... since [Grandmother] has demonstrated through consistent contact with Kenneth Watts that she will not keep [Agatha] safe from him."[3]
The trial court found that Grandmother continues to remain in contact with her boyfriend, Mr. Watts, a "substantiated sex offender." However, Respondent-mother contends that (1) there is no evidence of any danger to Agatha from any contact between her and Mr. Watts; (2) there is no evidence that Mr. Watts had sexually abused any other children since 2005; (3) Mr. Watts was never charged with a crime; and (4) Mr. Watts is not a registered sex offender.
Even if we were to accept Respondent-mother's argument regarding her challenge to the lack of evidence as to the danger posed by Mr. Watts to Agatha, her argument would still fail. A child's bond with a parent-or with a grandparent-is only one factor the court considers in determining the child's best interests, and the trial court is entitled to give greater weight to certain factors over others in making its best interests determination. See In re C.L.C., 171 N.C. App. 438, 448, 615 S.E.2d 704, 709-10 (2005) (holding that parental bond is just one factor for the court to consider and that the court may determine this factor is outweighed by other factors in best interests determination), aff'd per curiam in part, disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006) ; see also M.M. , 200 N.C. App. at 258, 684 S.E.2d at 469 (holding that trial court is not required to consider availability of relative placement during disposition phase of hearing).
Here, the trial court's findings of fact demonstrate that it considered all of the statutory factors. Therefore, we cannot say that the trial court abused its discretion in terminating Respondent-mother's parental rights. Accordingly, we affirm the court's order.
Conclusion
For the reasons stated above, we affirm the trial court's 19 July 2016 order.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and TYSON concur.

Pseudonyms and initials are used to protect the identity of the juveniles and for ease of reading.

The trial court also terminated the parental rights of D.M., Agatha's father, but he is not a party to this appeal.

Respondent-mother does not specifically challenge the remainder of the trial court's findings of fact. Thus, they are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citation omitted)).