684 S.E.2d 463 (2009)
In the Matter of M.M.
No. COA09-610.
Court of Appeals of North Carolina.
October 6, 2009.
*464 James N. Freeman, Jr., Elkin, for petitioner-appellee Yadkin County Department of Social Services.
Wyrick Robbins Yates & Ponton LLP by Tobias S. Hampson, Raleigh, for respondent-appellant father.
STROUD, Judge.
On 10 January 2008, the Yadkin County Department of Social Services ("DSS") filed a juvenile petition alleging that M.M. ("Michael")[1] was neglected and dependent. Michael's *465 mother, D.T. ("the mother"), had just given birth to Michael, had five other children in foster care due to a previous adjudication of neglect and was working with DSS on her family services case plan involving those children. DSS assumed custody of Michael and placed him in a licensed foster care home. Michael has remained in this foster home since birth.
The mother, although married to M.J.D., alleged her then current boyfriend, M.D.M., was the biological father of Michael. At the time of conception, M.J.D. was incarcerated and could not have been Michael's biological father. Later DNA testing of the mother's boyfriend confirmed M.D.M. was not the biological father. DSS later identified E.D.H. and M.P. as possible candidates as the biological father of Michael.
On 12 March 2008, the trial court entered an order finding Michael was a neglected and dependent juvenile. The trial court continued custody of Michael with DSS and ordered DSS to continue reasonable efforts toward reunification of Michael with his mother. However, by order entered 12 June 2008, the trial court relieved DSS of having to make reasonable efforts toward reunification with the mother and directed DSS to pursue the termination of parental rights to Michael.
On 31 July 2008, DSS filed a petition to terminate parental rights in Michael. DSS alleged that M.J.D. was the legal father of Michael and Michael's biological father was unknown. DSS further alleged that grounds existed to terminate the parental rights of the mother under N.C. Gen.Stat. § 7B-1111(a)(1) and (6), and that grounds existed to terminate the parental rights of the father under N.C. Gen.Stat. § 7B-1111(a)(5). DSS properly served Michael, the mother and the legal father. On 4 September 2008, petitioner caused a summons to be issued to the "unknown father" of the juvenile, but the record before this Court does not indicate whether petitioner served this summons by publication.
During a review hearing on 11 September 2008, the mother identified C.T. ("respondent-appellant") as a potential biological father of Michael. DSS located respondent-appellant in the Forsyth County Jail, and he acknowledged having had a relationship with the mother. Respondent-appellant agreed to a DNA test and his DNA sample was taken on 29 October 2008. Subsequent testing found respondent-appellant could not be excluded as the biological father of Michael and that the probability of paternity, when compared to an untested, unrelated male of the same population, was 99.99 percent.
After a review hearing on 20 November 2008, the trial court entered an order on 24 November 2008 finding that respondent-appellant is the biological father of Michael. The court named respondent-appellant as a party to the juvenile matter and ordered DSS to serve respondent-appellant with a juvenile summons and a copy of the termination petition. Due to the order requiring the addition of respondent-appellant as a party to the termination proceeding, the trial court continued the hearing on the termination petition until 29 January 2009.
On 4 December 2008, DSS caused the issuance of a summons naming respondent-appellant as a respondent in the termination proceedings, and respondent-appellant was served the following day. Respondent-appellant filed an answer and motion to dismiss the termination petition on 12 February 2009. Respondent-appellant moved to dismiss the petition based upon N.C. Gen.Stat. § 1A-1, Rule 12(b)(2)(2007), because "he is not alleged in the Petition to be the father of [Michael]" and based upon N.C. Gen.Stat. § 1A-1, Rule 12(b)(6), because the petition failed to state a claim against respondent-appellant as he was "not alleged in the Petition to be the father of [Michael]".
The trial court held a hearing on the termination petition on 12 February 2009, and granted DSS a continuance in order to permit DSS to amend the termination petition to include respondent-appellant as a named party. Since the continuance related to respondent-appellant only, the trial court held the hearing on the termination petition as to the mother and the legal father. On 13 February 2009, DSS filed an amended petition to terminate respondent-appellant's parental rights in Michael, specifically naming respondent-appellant *466 as the biological father of Michael.
On 5 March 2009, the trial court entered an order terminating the parental rights of the mother and the legal father. The trial court held a hearing on the amended petition to terminate respondent-appellant's parental rights on 12 March 2009 and found grounds existed under N.C. Gen.Stat. § 7B-1111(a)(5) to terminate respondent-appellant's parental rights. On 17 March 2009, the trial court entered an order terminating respondent-appellant's parental rights in Michael. Respondent-appellant filed notice of appeal on 24 March 2009.
Respondent-appellant argues the trial court erred in concluding grounds existed pursuant to N.C. Gen.Stat. § 7B-1111(a)(5) to terminate his parental rights in Michael. Respondent-appellant contends that the trial court's order of 24 November 2008, finding he was the biological father of Michael, constitutes a judicial establishment of paternity which occurred prior to the filing of the termination petition because DSS's filing of the amended petition on 13 February 2009 constitutes the filing of a new action. We disagree.
When DSS files a petition to terminate the parental rights of an unknown parent, the petition must "set forth with particularity the DSS's or movant's efforts to ascertain the identity or whereabouts of the parent or parents." N.C. Gen.Stat. § 7B-1104(3) (2007). The trial court must then conduct a preliminary hearing to ascertain the name or identity of the unknown parent. N.C. Gen. Stat. § 7B-1105(a) (2007). "Should the court ascertain the name or identity of the parent, it shall enter a finding to that effect; and the parent shall be summoned to appear in accordance with G.S. 7B-1106." N.C. Gen. Stat. § 7B-1105(b) (2007). Where the court is unable to ascertain the name or identity of the unknown parent,
the court shall order publication of notice of the termination proceeding and shall specifically order the place or places of publication and the contents of the notice which the court concludes is most likely to identify the juvenile to such unknown parent. The notice shall be published in a newspaper qualified for legal advertising in accordance with G.S. 1-597 and G.S. 1-598 and published in the counties directed by the court, once a week for three successive weeks.
N.C. Gen.Stat. § 7B-1105(d) (2007). The notice must, inter alia, direct the unknown parent "to answer the petition within 30 days after a date stated in the notice[.]" N.C. Gen.Stat. § 7B-1105(d)(5) (2007). These General Statute provisions provide the means by which an unidentified parent may be made a participant in proceedings to terminate parental rights in a juvenile.
Here, DSS first filed a petition to terminate parental rights in Michael on 31 July 2008. In the petition, DSS alleged that the biological father of Michael was unknown and that M.J.D. was the legal father of Michael. DSS further alleged that M.J.D. was incarcerated at the time of Michael's conception and thus could not be the biological father. DSS also set forth with particularity its efforts to ascertain the identity of Michael's biological father:
The mother named her boyfriend, [M.D.M.], as a potential father of the minor juvenile, but DNA testing eliminated [M.D.M.] as the biological father. The mother named [E.D.H.], [M.P.] and a third person's first name as possibly being the biological father of the minor juvenile. She has since recanted that [E.D.H.] and [M.P.] are possible fathers of the juvenile.
DSS then alleged that grounds existed to terminate the rights of the respondent father pursuant to N.C. Gen.Stat. § 7B-1111(a)(5) (2007). DSS fully complied with the mandates of N.C. Gen.Stat. § 7B-1104 when filing the petition to terminate the parental rights of an unknown father.
DSS filed a motion with the trial court on 28 August 2008, seeking a hearing pursuant to N.C. Gen.Stat. § 7B-1105 to ascertain the name or identity of the unknown father. The trial court held a hearing on DSS's motion on 11 September 2008, at which the mother identified respondent-appellant as a potential biological father of Michael. On 15 September 2008, the trial court entered an order directing respondent-appellant to submit to a *467 paternity test to determine if he is the biological father of Michael. Subsequent testing confirmed that respondent-appellant is the biological father of Michael, and on 24 November 2008 the trial court entered an order finding respondent-appellant is the biological father of Michael. The trial court's order also added respondent-appellant as a party to the termination proceeding and directed DSS to serve respondent-appellant with a summons and copy of the termination petition. DSS caused a summons in the matter to be issued to respondent-appellant on 4 December 2008, which was served on respondent-appellant on 5 December 2008. Thus, DSS and the trial court fully complied with the mandates of N.C. Gen.Stat. § 7B-1105, and respondent-appellant was properly added as a party to the termination proceeding.
On 13 February 2009, DSS filed an amended petition to terminate parental rights in Michael adding an allegation that respondent-appellant is the biological father of Michael. DSS also attached and incorporated into the amended petition the paternity test results and a copy of the 24 November 2008 order of the trial court designating respondent-appellant as a party to the termination proceeding. In the amended petition, DSS again alleged that grounds existed to terminate the parental rights of the father only pursuant to N.C. Gen.Stat. § 7B-1111(a)(5). Respondent-appellant's argument that this amended petition constituted a new action is misplaced.
Respondent-appellant is correct that in a general civil action, "an amended complaint has the effect of superseding the original complaint." Hyder v. Dergance, 76 N.C.App. 317, 319-20, 332 S.E.2d 713, 714 (1985). However, because respondent-appellant is Michael's biological father and because his identity was unknown at the time of the filing of the original petition, the addition of respondent-appellant as a party to the termination proceedings is controlled not by Rule 15 of the North Carolina Rules of Civil Procedure, but rather by N.C. Gen.Stat. § 7B-1105. See In re Peirce, 53 N.C.App. 373, 380, 281 S.E.2d 198, 202-03 (1981) (holding that the comprehensiveness of former Article 24B-the predecessor to Article 11-showed the legislature's intent that Article 24B "exclusively control the procedure to be followed in the termination of parental rights" and that there was no intent for "the requirements of the basic rules of civil procedure of G.S. 1A-1 be superimposed upon" the statutory requirements governing proceedings to terminate parental rights); see also In re B.L.H., 190 N.C.App. 142, 145-46, 660 S.E.2d 255, 257 (holding that the "North Carolina Rules of Civil Procedure do not provide parties in termination actions with procedural rights not explicitly granted by the juvenile code[,]" but will "apply to fill procedural gaps where Chapter 7B requires, but does not identify, a specific procedure to be used in termination cases." (citations and quotations omitted)), aff'd, 362 N.C. 674, 669 S.E.2d 320 (2008). N.C. Gen.Stat. §§ 7B-1104 and 7B-1105 have specific provisions which address the procedure which the court is to follow in exactly the situation presented here: termination of parental rights of a biological father who has not yet been identified when the petition is originally filed. Defendant's proposed use of N.C. Gen.Stat. § 1A-1, Rule 15 to deprive the court of personal jurisdiction over the newly identified father, despite compliance with N.C. Gen.Stat. § 7B-1105, through the creation of a "new action" when the biological father is eventually identified and made a party to the action would defeat the entire purpose of N.C. Gen.Stat. §§ 7B-1104 and 7B-1105. Respondent-appellant was properly added as a party to the termination proceeding pursuant to the trial court's order of 24 November 2008 and the subsequent issuance and service upon him of the summons and petition to terminate parental rights in Michael.
Here, the amended petition is no more than a supplemental pleading which merely clarified that respondent-appellant was the biological father of Michael. In fact, the amended petition was not necessary for the trial court to have personal jurisdiction over respondent-appellant. DSS filed the amended petition only in response to respondent-appellant's motion to dismiss, alleging that the trial court did not have personal jurisdiction over him and that the original petition stated no claim for relief against him because he was not alleged to be the father of Michael *468 in the original petition. However, as noted above, DSS and the trial court both correctly followed the procedure set forth in N.C. Gen.Stat. § 7B-1105 for the identification of an unknown biological father and addition of the father to the action when he had been identified. N.C. Gen.Stat. § 7B-1105(b) provides that, "[s]hould the court ascertain the name or identity of the parent, it shall enter a finding to that effect; and the parent shall be summoned to appear in accordance with G.S. 7B-1106." N.C. Gen. Stat. § 7B-1105(b) does not require that DSS file an amended petition upon identification of the unknown parent; it requires only that the trial court make a finding as to the identity of the parent and that the parent "be summoned to appear in accordance with G.S. 7B-1106." Therefore, even without an amendment to the petition, the trial court would have had personal jurisdiction over respondent-appellant since it followed the procedure set forth by N.C. Gen.Stat. § 7B-1105. After having been found to be the biological father of Michael, respondent-appellant was put on notice that DSS sought the termination of his parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(5) upon service of the summons and original petition. See In re Hardesty, 150 N.C.App. 380, 384, 563 S.E.2d 79, 82 (2002) ("While there is no requirement that the factual allegations [in a petition for termination of parental rights] be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue."). The amended petition did not change or otherwise add an additional ground for terminating the father's parental rights and did not add a party to the proceeding as respondent-appellant was already a party to the termination proceeding. Accordingly, we hold the amended petition to terminate parental rights to Michael did not supersede the original petition such that a new action was brought upon its filing on 13 February 2009.
A trial court may terminate the parental rights of a father of a juvenile born out of wedlock if the father has not, prior to the filing of the petition to terminate his parental rights:
a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services ...; or
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or
c. Legitimated the juvenile by marriage to the mother of the juvenile; or
d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
N.C. Gen.Stat. § 7B-1111(a)(5) (2007). When terminating the parental rights of a father under Section 7B-1111(a)(5), the trial court must find "that the putative father has not attempted any of the four possible ways to legitimate his child ...." In re Hunt, 127 N.C.App. 370, 373, 489 S.E.2d 428, 430 (1997) (emphasis added); see also In re I.S., 170 N.C.App. 78, 88, 611 S.E.2d 467, 473 (2005) (noting that, when basing the termination of parental rights on N.C. Gen.Stat. § 7B-1111(a)(5), "the court must make specific findings of fact as to all four subsections[.]"); In re T.L.B., 167 N.C.App. 298, 302, 605 S.E.2d 249, 252 (2004) ("Upon a finding that the putative father has not attempted any of the four possible ways to legitimate his child, the trial court may terminate [his] parental rights." (quotations and citation omitted)). "[T]he provisions of section 7B-1111(a)(5) are applied strictly, without regard to the respondent-father's knowledge of the minor child[.]" In re M.A.I.B.K., 184 N.C.App. 218, 223, 645 S.E.2d 881, 885 (2007). "On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006) (quotations and citations omitted).
Here, the trial court found:
11. The respondent father and the mother... have never been married to one another.
12. The respondent father was unaware of the birth of the minor child until he was contacted by [DSS] regarding paternity testing. He did not know the name of the mother except by a nickname.
13. The respondent father has been continuously incarcerated since March of 2008. *469 He has never seen the minor child. He has never provided substantial support or consistent care for the minor child or the mother in the way of child support or otherwise.
14. As evidenced by the letter admitted into evidence by the North Carolina Department of Health and Human Services, the father has not, prior to the filing of the petition to terminate parental rights, established paternity judicially or by affidavit.
15. The father has not legitimated the minor child pursuant to N.C.G.S. § 49-10 or filed a petition for that purpose.
Respondent-appellant's only challenge to these findings of fact is to finding of fact number fourteen, arguing that he established paternity judicially prior to the filing of the petition for termination of parental rights, referring to the amended petition, as discussed above. The remaining unchallenged findings of fact are binding on this Court on appeal. In re J.D.S., 170 N.C.App. 244, 250-51, 612 S.E.2d 350, 354-55, cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005). Respondent-appellant contends he established paternity judicially via the trial court's order of 24 November 2008, and the paternity determination occurred prior to the filing of the amended petition on 13 February 2009. As discussed supra, respondent-appellant is required to have established paternity prior to the filing of the original petition on 31 July 2008. Thus, even if the trial court's order of 24 November 2008 constitutes a judicial determination of paternity, the order still came almost four full months after the filing of the petition. Again, respondent-appellant's proposed interpretation of the statutes is illogical. Indeed, if we were to accept his argument, it would be impossible for a biological father identified after the filing of the original petition, pursuant to N.C. Gen.Stat. § 7B-1105, to ever fail to "[establish] paternity judicially" pursuant to N.C. Gen.Stat. § 7B-1111(a)(5)(a) prior to the filing of the petition for termination of parental rights. Based upon respondent-appellant's argument, the father is unknown when the original petition is filed; the father is later identified; the trial court makes a finding in compliance with N.C. Gen.Stat. § 7B-1105(b) as to the identity of the father; an amendment to the petition is required to add the newly identified father, thus creating a "new action;" and thus, paternity was "judicially established" prior to the filing of the petition for termination of the father's rights, so that a father's parental rights in this situation could never be terminated pursuant to N.C. Gen.Stat. § 7B-1111(5). This interpretation does not accord with the plain language of N.C. Gen. Stat. § 7B-1105 and entirely defeats the purpose of N.C. Gen.Stat. §§ 7B-1105 and 7B-1111(5). Accordingly, the trial court's findings of fact support its conclusion of law that grounds existed to terminate respondent-appellant's parental rights in Michael pursuant to N.C. Gen.Stat. § 7B-1111(a)(5). See In re A.R.H.B., 186 N.C.App. 211, 217, 651 S.E.2d 247, 253 (2007) (upholding the termination of the respondent-appellant father's parental rights under N.C. Gen.Stat. § 7B-1111(a)(5) where paternity was established by DSS shortly before the termination hearing), appeal dismissed, 362 N.C. 235, 659 S.E.2d 433 (2008). These assignments of error are overruled.
Respondent-appellant next argues the trial court abused its discretion in concluding it is in the best interest of Michael to terminate respondent-appellant's parental rights. Respondent-appellant contends the trial court abused its discretion because respondent-appellant's mother is willing to take custody of Michael and it is unclear whether Michael's foster parent will be able to adopt Michael. Again, we disagree.
"Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered." In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). "The decision to terminate parental rights is vested within the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the [trial court's] actions were manifestly unsupported by reason." In re J.A.A., 175 N.C.App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).
A trial court may, but is not required to, consider the availability of a relative placement during the dispositional phase of a hearing to terminate parental rights. Id. *470 Further, nothing within N.C. Gen.Stat. § 7B-1110 (2007) requires that termination lead to adoption in order for termination to be in a child's best interests. Here, respondent-appellant has not taken any actions exhibiting a parental interest in Michael. Apart from not taking any of the actions in N.C. Gen.Stat. § 7B-1111(a)(5) which provide grounds for termination of his parental rights, respondent-appellant has never seen Michael and has never inquired after Michael's well-being, even after it was determined he was the biological father. While respondent-appellant's mother expressed her desire to have custody of Michael and made attempts to gain visitation and pay child support, respondent-appellant himself has done nothing except consent to the DNA test which ultimately established his paternity. Accordingly, we cannot hold that the trial court's conclusion that it is in the best interest of Michael to terminate respondent-appellant's parental rights is manifestly unsupported by reason. These assignments of error are overruled.
Affirmed.
Judges STEPHENS and ERVIN concur.
NOTES
[1] We will refer to the minor child M.M. by the pseudonym Michael to protect the child's identity and for ease of reading.