BERGER, Judge.
Respondent, the mother of the minor child N.L.C. ("Nadia"[1] ), appeals from the trial court's order terminating her parental rights. Respondent argues the trial court erred in determining that termination of her parental rights was in Nadia's best interests because it did not make the necessary findings of fact under N.C. Gen. Stat. § 7B-1110 (2017). For the following reasons, we affirm.
Factual and Procedural Background
When Nadia was born in 2014, Respondent was sixteen years old and had a long history of substance abuse issues. On March 5, 2015, Respondent and the child's father engaged in a domestic violence incident, resulting in Respondent being arrested. That same day, the Caldwell County Department of Social Services ("DSS") received a Child Protective Services ("CPS") report alleging substance abuse and domestic violence by both parents. According to the report, various family members had found needles and burnt spoons in Respondent's bedroom. Nadia was then placed in a kinship care placement with her paternal grandparents.
On April 13, 2015, Respondent entered into an In Home Family Services Agreement, in which she agreed to (1) complete a comprehensive clinical assessment with a mental health and substance abuse component and comply with all recommendations; (2) submit to random drug screens; (3) refrain from using alcohol, illegal substances, and medication not prescribed to her; (4) refrain from entering domestic violence relationships; (5) obtain and maintain safe, appropriate, independent housing; and (6) obtain and maintain legal, gainful employment.
On July 29, 2015, DSS filed a juvenile petition alleging Nadia was a neglected and dependent juvenile. The petition alleged that Respondent removed Nadia from her kinship placement with the paternal grandparents and placed Nadia with her maternal great-grandparents without informing DSS. The petition further alleged that Respondent had recently stolen medication and money from her grandmother. DSS further alleged that neither parent had completed any case plan goals in order to address the identified issues.
Following a hearing on the juvenile petition in December 2015, the trial court entered an order adjudicating Nadia to be a neglected and dependent juvenile. In a disposition order entered January 15, 2016, the trial court placed the juvenile in the custody of DSS and approved placement with the maternal great-grandparents. The trial court also ordered Respondent to comply with the components of her case plan.
On March 9, 2016, Respondent relinquished her parental rights in favor of the maternal great-grandparents. In a subsequent permanency planning order, the trial court changed the permanent plan to adoption with a secondary plan of guardianship with a relative. The trial court continued custody with DSS and placement with the maternal great-grandparents.
However, in February 2017, DSS received a CPS report alleging the maternal great-grandparents were using drugs. The maternal great-grandparents submitted to drug screens on February 21, 2017. The great-grandmother's drug screen was negative, but the great-grandfather tested positive for both methamphetamine and marijuana. During the investigation, the great-grandfather admitted to the social worker that he had used methamphetamine. The great-grandfather was negative for all tested substances on a subsequent drug screen, but the great-grandmother refused submit to additional drug screens. As a result, DSS decided to remove Nadia from the home in March 2017.
When DSS attempted to pick up Nadia on March 31, 2017, the maternal great-grandmother tried to evade DSS's efforts to gain physical custody of Nadia by taking the juvenile to multiple residences. DSS and law enforcement ultimately found the great-grandmother at a friend's house hiding in a closet with Nadia. DSS then placed Nadia in a foster home.
After her removal, Nadia was found to have a full head of lice and significant cavities, and she was behind on her wellness exams and immunizations. On April 4, 2017, due to the reports of drug abuse in the great-grandparents' home, a hair follicle test was done on Nadia. Results of the drug test indicated that she was positive for methamphetamine. On April 10, 2017, Respondent revoked her relinquishment of her parental rights in favor of the maternal great-grandparents.
DSS subsequently filed a motion to terminate Respondent's parental rights to Nadia, alleging neglect, willful failure to make reasonable progress, willful failure to pay reasonable costs of care, abandonment, and dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6)-(7) (2017). Following a March 2018 hearing, the trial court entered an order terminating Respondent's parental rights.[2] The trial court concluded that grounds existed to terminate Respondent's parental rights as alleged in the petition, and that termination of Respondent's parental rights was in Nadia's best interests. Respondent timely appealed.
Respondent does not challenge the trial court's adjudication that grounds existed to terminate her parental rights. Rather, Respondent's sole argument on appeal is that the trial court abused its discretion in concluding that the termination of her parental rights was in Nadia's best interests. Specifically, Respondent contends that the trial court failed to make the necessary findings of fact required by Section 7B-1110.
Analysis
After a trial court adjudicates the existence of at least one ground upon which to base termination, the court must then determine at disposition whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a). The trial court must consider the following factors in making its determination:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
Id .
While the trial court must consider all of these factors, it is required to make written findings of fact regarding only those factors that are relevant. In re D.H. , 232 N.C. App. 217, 221, 753 S.E.2d 732, 735 (2014) (citation and quotation marks omitted). A factor is relevant if there is conflicting evidence concerning the factor such that it is placed in issue. In re H.D. , 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (citation and quotation marks omitted). "The court's determination of the juvenile's best interest will not be disturbed absent a showing of an abuse of discretion." In re E.M. , 202 N.C. App. 761, 764, 692 S.E.2d 629, 630 (2010) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).
Respondent acknowledges that the trial court properly considered and made appropriate findings of fact regarding the first five factors. Respondent argues, however, that the trial court did not adequately consider and make findings of fact regarding the sixth factor, "[a]ny relevant consideration." See N.C. Gen. Stat. § 7B-1110(a)(6). Specifically, Respondent argues the court failed to adequately consider and make findings regarding "significant issues raised at disposition," including "Nadia's very close bond with her great grandparents, the quality of their care of her, their suitability as a potential placement, and whether it was in [Nadia's] best interest to completely sever her relationship" with them. We disagree.
"A trial court may, but is not required to, consider the availability of a relative placement during the dispositional phase of a hearing to terminate parental rights." In re M.M. , 200 N.C. App. 248, 258, 684 S.E.2d 463, 469 (2009). Further, contrary to Respondent's assertion, the quality of care provided by the maternal great-grandparents and their suitability as a potential placement was not at issue during the disposition hearing. The trial court had already determined during the adjudication phase that they were not an appropriate placement for Nadia and this determination was not challenged on appeal. In the adjudication portion of the order, the trial court found:
16. The Respondent mother has not offered an appropriate alternative child care arrangement for the juvenile. The child was originally placed with the maternal great grandparents where she remained after [DSS] was granted custody on December 16, 2015 until March 31, 2017. The child was removed from their home after the great grandfather acknowledged to the social worker that he had used methamphetamine. At the time [DSS] attempted to remove the child, who was in their custody, the maternal great grandmother attempted to evade the efforts of [DSS] in picking up the child. She was ultimately found hiding in a closet with the juvenile.... Thereafter the maternal great grandmother confronted the maternal great grandfather with a gun. Law enforcement had to respond to that incident, as well. In addition, when the minor child was recovered by [DSS] from the maternal great grandparents she had lice and significant cavities. The juvenile tested positive for methamphetamine by a hair follicle test after her removal from the maternal great grandparents. This was the drug that the maternal great grandfather admitted using. Other than the maternal great grandparents, which the Court had deemed inappropriate for placement of the juvenile; ... the Respondent mother has not offered an appropriate alternative child care arrangement for the juvenile.
Additionally, no conflicting evidence presented at the hearing regarding Nadia's bond with the great grandparents such that it was placed in issue. See In re H.D. , 239 N.C. App. at 327, 768 S.E.2d at 735. Both the social worker and the great-grandmother testified during the dispositional hearing that Nadia was closely bonded with the great-grandparents. The additional evidence at the hearing pertaining to the great-grandparents' care of Nadia and their ability to be a placement for her was irrelevant as the trial court had already determined they were not an appropriate placement during the adjudication phase.
In support of its conclusion that termination of Respondent's parental rights would be in Nadia's best interests, the trial court made the following findings of fact:
1. That the child was placed in the custody of [DSS] when she was almost six months old. She is now just over four years old. She has been in her current foster home since July, 2017. This is a two parent home and there is one other child in the home who is the biological child of the proposed adoptive placement. The minor child is very bonded to these foster parents and her foster sibling. The proposed adoptive placement is committed to adopting her. She feels safe and secure with this family. She displays very affectionate behaviors with them and looks to them to meet her needs.
2. There is no bond between the Respondent father and the minor child. She has never known him or been cared for by him. She was briefly placed with his parents but he had no role in caring for her during that placement. He has not had any contact with her since she was just over two years old in April 2016. That is a substantial and significant period of her life.
3. There is no bond between the Respondent mother and the minor child. She has never known her or been cared for by her. She was placed with the maternal great grandparents until she was three years old. Prior to [DSS] being granted custody of the minor child, the Respondent mother was in and out of that home but she did not provide care for the minor child. She admits that during that period of time she was functioning in a drug-induced haze. She did not provide care for the juvenile at all. She has not had any contact with her since she was just over two years old in March 2016. That is a substantial and significant period of her life.
[4]. The prospective adoptive parents have provided a safe, stable, nurturing home for the minor child. Their home is appropriate and free of substance abuse issues. They are licensed foster parents and have passed all background checks.
[5]. The permanent plan for the minor child is adoption and the potential adoptive family has a very strong bond with the minor child and have provided care for her. They are committed to adopting her if she becomes available for adoption.
[6]. The minor child is presently in counseling every other week. The foster mother participates in this therapy with the minor child. The potential adoptive parents are committed to helping her access additional services should the need arise in the future, as well.
[7]. Since the child's removal from the home of the maternal great grandparents, she has not asked for them or made any reference to them.
Respondent does not challenge any of these findings, so they are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). The trial court's findings indicate that the trial court did consider the child's bond with her great-grandparents and determined that although there may have been a bond, Nadia "ha[d] not asked for them or made any reference to them" in the eleven months since she was removed from their home. Therefore, we hold the trial court made the necessary findings of fact under Section 7B-1110(a).
Nadia's bond with the great-grandparents is just one factor for consideration in determining her best interests, and the court is entitled to give greater weight to certain factors over others in making its best interest determination. See In re C.L.C. , 171 N.C. App. 438, 448, 615 S.E.2d 704, 709 (2005) (noting that the parental bond is one factor the court may consider, but the court may determine that this factor is outweighed by other factors in making the determination of the child's best interest). Based on these findings, we cannot say that the trial court's determination was so manifestly unsupported by reason as to constitute an abuse of discretion. Accordingly, we affirm the trial court's order terminating Respondent's parental rights to Nadia.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and DILLON concur.

A pseudonym is used to protect the juvenile's identity and for ease of reading.

The trial court initially entered an order on April 4, 2018 terminating Respondent's parental rights. An amended order was entered by the trial court on April 16, 2018.