IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-72

No. 20A20

Filed 18 June 2021

IN THE MATTER OF: E.S. and E.S.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 3 December 2019 by Judge Hal G. Harrison in District Court, Watauga County. This matter was calendared for argument in the Supreme Court on 22 April 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Chelsea Bell Garrett for petitioner-appellee Watauga County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*David A. Perez for respondent-appellant father.*

*Leslie Rawls for respondent-appellant mother.*

BARRINGER, Justice.

Respondent-mother is the biological mother of E.S. (Elyse) and E.S.S. (Elizabeth),[1] and respondent-father is the biological father of Elizabeth. Respondent-mother appeals from the trial court's order finding that it was in Elyse's best interests

---

[1] Pseudonyms are used to protect the juveniles' identities and for ease of reading. A pseudonym will also be used to protect the identity of Elizabeth's twin, Ida, who passed away as an infant.

to terminate her parental rights. Although respondent-mother filed a notice of appeal as to Elizabeth, respondent-mother has abandoned all arguments relating to the trial court's termination of her parental rights as to Elizabeth and the trial court's best interests determination for Elizabeth because respondent-mother did not present or discuss any issues regarding Elizabeth in her brief. *See* N.C. R. App. P. 28(a). Respondent-father appeals from the trial court's order finding that it was in Elizabeth's best interests to terminate his parental rights. Since we conclude that the trial court did not abuse its discretion in its best interests determination as to Elyse and Elizabeth, respectively, we affirm the trial court's orders.

## I.    Facts

In December 2017, respondent-mother gave birth to twin girls, Elizabeth and Ida. At birth, both Elizabeth and Ida tested positive for methadone. Prior to giving birth, respondent-mother tested positive for methamphetamine, methadone, and acetaminophen. The twins were suffering from withdrawal and were transferred to the pediatric unit before being released to respondents. Ida later passed away on 18 February 2018 from unknown causes.

Respondent-father did not live with respondent-mother and Elizabeth but stayed at a nearby hospitality house. A social worker with the Watauga County Department of Social Services (DSS) stated that respondent-father was incapable of

providing care for Elizabeth on his own and that he did not have the proper living situation to do so.

¶ 4 Respondent-mother subsequently tested positive for methamphetamine on 4 February, 2 March, and 7 March 2018. Respondent-mother's older child, Elyse[2] (born on 7 May 2004), was also residing with respondent-mother during this time. After receiving a report of respondent-mother's substance abuse and respondent-father's lack of stable housing, DSS filed juvenile petitions on 15 March 2018 alleging that Elyse and Elizabeth were neglected and dependent juveniles and obtained nonsecure custody of the children.

¶ 5 In an order entered 31 May 2018, the trial court adjudicated the children as dependent juveniles based on stipulations acknowledged by respondents. In a separate disposition order filed on 15 June 2018 and amended on 3 July 2018, the trial court set the permanent plan for Elyse and Elizabeth as reunification with a concurrent plan of guardianship. Respondents entered into case plans that required them to complete treatment at a substance abuse recovery center, attend parenting classes, attend visitation regularly, submit to drug screens, and maintain safe housing, among other requirements. Respondent-mother was also required to participate in grief counseling with a licensed provider to learn healthy coping skills and maintain stability.

---

[2] Elyse's biological father is deceased.

¶ 6     In a permanency-planning order entered on 17 January 2019, the trial court continued the permanent plan of reunification with a concurrent plan of guardianship for Elyse and Elizabeth. The trial court found that respondent-mother had made minimal progress on her case plan and was not cooperating with DSS or the guardian ad litem (GAL) program. The trial court suspended respondent-mother's visitation with the children until she provided a release of information to the substance abuse recovery center, which would allow DSS to "follow up on her treatment progress." The trial court also required her to submit at least two clean drug screens to DSS prior to any visitation. Regarding respondent-father, the trial court found that he was making adequate progress on his case plan and permitted DSS to increase his visitation with Elizabeth.

¶ 7     After a permanency-planning hearing held on 15 February 2019, the trial court found that respondents were not making adequate progress on their case plans and so changed the permanent plan for Elyse to adoption with a concurrent plan of guardianship and changed the permanent plan for Elizabeth to guardianship with a concurrent plan of adoption. Respondent-mother had not visited Elyse and Elizabeth since September 2018 because she failed to submit clean drug screens, and respondent-father had not visited Elizabeth since January 2019 because he refused to participate in drug screens. The trial court also found that respondent-father had

not maintained stable housing and that he admitted to using methamphetamine as recently as two days before the permanency-planning hearing.

¶ 8        The trial court held another permanency-planning hearing on 11 April 2019 and found that respondents had made little to no progress on their case plans and that the conditions that led to the removal of Elyse and Elizabeth from the home still existed. The trial court maintained the permanent and concurrent plans for Elyse and Elizabeth.

¶ 9        On 8 May 2019, DSS filed motions to terminate respondent-mother's parental rights to Elyse and Elizabeth and respondent-father's parental rights to Elizabeth pursuant to N.C.G.S. § 7B-1111(a)(1), (6), and (7). After the termination-of-parental-rights hearing held on 26 and 27 September 2019, the trial court found that grounds existed to terminate respondents' parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (6) and that termination of respondents' parental rights was in Elyse's and Elizabeth's best interests pursuant to N.C.G.S. § 7B-1110(a).[3] Accordingly, the trial court terminated respondent-mother's parental rights to Elyse and Elizabeth and respondent-father's parental rights to Elizabeth. Respondents appealed.

---

[3] In an order entered on 1 October 2019, the trial court also amended the order from the 11 April 2019 permanency-planning hearing to correct the permanent plan for Elizabeth, which had been inadvertently reversed. The trial court corrected the permanent plan for Elizabeth to properly reflect adoption as the permanent plan with a concurrent plan of guardianship.

On appeal, respondents do not challenge the trial court's grounds for termination but instead argue that the trial court abused its discretion in concluding that it was in Elyse's and Elizabeth's best interests to terminate respondents' parental rights. Respondent-mother only challenges the trial court's best interests determination as to Elyse.

## II.    Applicable Law

The termination of parental rights is a two-stage process consisting of an adjudicatory stage and a dispositional stage. *See* N.C.G.S. §§ 7B-1109 to -1110 (2019). If, during the adjudicatory stage, the trial court finds grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), the trial court proceeds to the dispositional stage where it must "determine whether terminating the parent's rights is in the juvenile's best interest" after considering the following criteria:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). The trial court must "make written findings regarding the [aforementioned criteria] that are relevant." *Id.* "A factor is relevant if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the district court." *In re C.J.C.*, 374 N.C. 42, 48 (2020) (cleaned up) (quoting *In re A.R.A.*, 373 N.C. 190, 199 (2019)). "We review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re J.J.B.*, 374 N.C. 787, 793 (2020).

¶ 12 "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6 (2019). "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *In re T.L.H.*, 368 N.C. 101, 107 (2015) (alteration in original) (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)).

## III.   Respondent-mother's Appeal

¶ 13 Respondent-mother only challenges the trial court's dispositional determination for her oldest child, Elyse. Respondent-mother argues that the trial court abused its discretion in determining that termination of her parental rights was in Elyse's best interests. We disagree.

¶ 14 Respondent-mother first argues that the trial court failed to comply with the statutory mandate of N.C.G.S. § 7B-1110(a) because it did not "expressly consider"

and receive evidence regarding whether Elyse consented to adoption. Since Elyse was fifteen years old at the time of the termination hearing and N.C.G.S. § 48-3-601(1) requires minors over twelve years old to consent to adoption, respondent-mother contends that N.C.G.S. § 7B-1110(a)(1)−(3) and (6) "required the court to consider the need for her consent to any adoption" because Elyse's refusal to give consent would create a barrier that would diminish the likelihood of her adoption. Respondent-mother also challenges the portion of finding of fact 11 stating that termination of respondent-mother's parental rights was the "only barrier" to achieving the permanent plan of adoption because N.C.G.S. § 48-3-601 requires Elyse's consent for adoption.

¶ 15     The controlling statute for termination-of-parental-rights proceedings does not expressly require a trial court to consider a child's consent to adoption in making its dispositional decision. N.C.G.S. § 7B-1110(a). In fact, N.C.G.S. § 48-3-601(1) is found in an entirely separate chapter of the General Statutes of North Carolina, which concerns adoption. The trial court in the dispositional stage of a termination-of-parental-rights hearing is charged with "determin[ing] whether *terminating the parent's rights* is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (emphasis added). Testimony concerning Elyse's interest in adoption may be admissible evidence during the dispositional stage and considered by the trial court. However, the dispositional determination by a trial court that terminating the parent's rights

is in the juvenile's best interests is not an abuse of discretion merely because a child over the age of twelve indicates a lack of interest in adoption. *See In re M.A.*, 374 N.C. 865, 879−80 (2020) (affirming the trial court's best interest determination after holding that while a child's consent to adoption is relevant to a trial court's best interests determination, it is not controlling and that findings and conclusions concerning likelihood of consent to adoption were not required); *In re M.M.*, 200 N.C. App. 248, 258 (2009) ("Further, nothing within [N.C.G.S. § 7B-1110] requires that termination lead to adoption in order for termination to be in a child's best interests."), *disc. review denied*, 364 N.C. 241 (2010). Notably, there was no testimony or evidence that Elyse had no interest or would not consent to adoption. Therefore, we reject respondent-mother's argument that the trial court should have expressly considered Elyse's consent to adoption and respondent-mother's challenge to finding of fact 11.[4]

Respondent-mother next argues that the trial court abused its discretion in determining that termination of her parental rights was in Elyse's best interests

---

[4] Respondent-mother also argues that the GAL provided Elyse with incorrect information regarding the educational benefits of adoption, and therefore, respondent-mother asserts that to the extent Elyse consented to adoption, it could not have been knowing and voluntary. Since we have rejected respondent-mother's argument that the trial court should have expressly considered Elyse's consent to an adoption, we reject respondent-mother's argument that Elyse's consent to an adoption could not have been knowing and voluntary for the same reasons.

because it failed to consider Elyse's bond with respondent-mother and whether Elyse consented to adoption. Respondent-mother argues that "it does not appear the court considered Elyse's bond with [respondent-]mother" because "[t]he record is replete with references to their love and connection and to . . . Elyse's wish to return to her mother." The uncontested evidence does demonstrate that Elyse loves respondent-mother and has a bond with her. As such, the trial court was not required to make a finding on this issue. *See In re E.F.*, 375 N.C. 88, 91 (2020) ("Although the trial court must 'consider' each of the statutory factors . . . we have construed [N.C.G.S. § 7B-1110(a)] to require written findings only as to those factors for which there is conflicting evidence." (quoting N.C.G.S. § 7B-1110(a))).

¶ 17        Additionally, "the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." *In re Z.L.W.*, 372 N.C. 432, 437 (2019). In this case, the GAL testified that while Elyse wished the situation with respondent-mother to be different, Elyse wanted to remain with her foster parents. The trial court also found that Elyse had not seen respondent-mother in nearly twelve months due to respondent-mother's noncompliance with the trial court's orders. Therefore, we reject respondent-mother's argument.

¶ 18        The trial court was not required to consider Elyse's consent to adoption for its dispositional conclusion pursuant to N.C.G.S. § 7B-1110, nor was the trial court

required to make findings as to Elyse's bond with respondent-mother when it was uncontested. Therefore, the trial court did not abuse its discretion in concluding that it was in Elyse's best interests to terminate respondent-mother's parental rights, and we affirm the trial court's orders.

¶ 19    Respondent-mother has abandoned any challenges to the trial court's termination of her parental rights as to Elizabeth and to the trial court's best interests determination concerning Elizabeth because respondent-mother did not present or discuss any arguments in her brief. *See* N.C. R. App. P. 28(a).

## IV.    Respondent-father's Appeal

¶ 20    Respondent-father argues that the trial court abused its discretion in its best interests determination as to Elizabeth because it failed to make "necessary and proper" findings of fact regarding a possible relative placement as required by *In re S.D.C.*, 373 N.C. 285, 290 (2020). We disagree.

¶ 21    One month prior to the termination hearing, respondent-father submitted to DSS a request that his third cousin be a potential placement for Elizabeth. The investigation was still pending at the time of the termination hearing. In the termination order, the trial court found that

> b.    [Elizabeth] is currently in an adoptive placement and is very bonded to the foster parents and her adoptive siblings. She has been in this placement all but approximately five months of her 18 months in DSS custody.

c. [Elizabeth] has not seen [respondent-mother] since the fall of 2018 or [respondent-father] for at least six (6) months.

d. The proposed kinship placement suggested by [respondent-father] would not be appropriate as [Elizabeth] has been with her foster family for most of her life and [respondent-father] just suggested this kinship placement last month. Additionally, the potential kinship provider expressed reservations to the GAL regarding [respondent-father] possibly interfering and causing problems.

¶ 22 The dispositional findings show that the trial court considered the relative placement and made findings of fact sufficient to allow this Court to review the trial court's dispositional determination for abuse of discretion. We therefore reject respondent-father's argument that the trial court abused its discretion by concluding that termination was in the best interests of Elizabeth. "[T]he trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered." *In re J.A.A.*, 175 N.C. App. 66, 75 (2005). The trial court is also not "expressly directed to consider the availability of a relative placement in the course of deciding a termination of parental rights proceeding." *In re S.D.C.*, 373 N.C. at 290.

¶ 23 In *In re S.D.C.*, this Court recognized that a trial court "may treat the availability of a relative placement as a 'relevant consideration' in determining whether termination of a parent's parental rights is in the child's best interests" and indicated that when determined to be a relevant consideration, "the trial court *should make* findings of fact addressing 'the competing goals of (1) preserving the ties

between the children and their biological relatives; and (2) achieving permanence for the children as offered by their prospective adoptive family.' " *Id.* (emphasis added) (quoting *In re A.U.D.*, 373 N.C. at 12). When there is no evidence presented at the termination hearing tending to show that a potential relative is available for the juvenile, the trial court need not consider or make findings on the matter. *In re S.D.C.*, 373 N.C. at 291. Furthermore, the dispositional findings demonstrate that the trial court adequately considered the "critical circumstances" regarding Elizabeth's placement.

Since this Court concludes that the trial court's decision on this matter was not so manifestly unsupported by reason as to constitute an abuse of discretion, we affirm the trial court's order terminating respondent-father's parental rights to Elizabeth.

## V. Conclusion

In summary, we conclude that the trial court did not abuse its discretion in determining that termination of respondent-mother's parental rights was in Elyse's best interests and that termination of respondent-father's parental rights was in Elizabeth's best interests. Respondent-mother abandoned any and all challenges to the trial court's order terminating her parental rights to Elizabeth and the trial court's best interests determination as to Elizabeth. Accordingly, we affirm the trial court's orders terminating respondents' parental rights.

AFFIRMED.